I understand both counsel in this case as well are going to observe their uninterrupted time, but you'll let the court know when you're free and open. All right, Mr. Herman. May it please the court, I'd like to begin this morning by addressing briefly three questions. First, why the Johnson decision compels finding Section 16B to be unconstitutionally vague, just like the ACCA residual clause. Second, why this conclusion fits within the broad scope of Supreme Court precedent on vagueness. And third, why this court should decide this issue and can decide this issue now. First, with regard to Johnson, Johnson compels that Section 16B also be held unconstitutionally vague because Section 16B shares the same fundamental method for applying that statute as well as the residual clause. The Johnson court held the residual clause to be unconstitutionally vague because of Johnson identified specifically two parts of the method that constituted the vagueness, the ordinary case analysis and the application of an undefined risk standard to that ordinary case. The Johnson court also identified the two problems with the ordinary case approach. First, the reliance on an idealized case instead of the real world or actual conduct of the defendant. And secondly, the complete absence of standards to guide courts in determining how to construct that case, in other words, how to determine whether to choose between competing versions of different ordinary cases. These two parts were the essential keys to finding the ACCA residual clause unconstitutionally vague, but they're also the two key components of how that statute is applied in every case. That's because no court can decide or measure risk of injury from an offense without first deciding what that offense is, and that refers directly back to this ordinary case that has to be determined as step one. Because the ordinary case is the starting point, the Johnson court found that its earlier efforts to look at just one side of the equation, the serious potential risk side, that those core, which is the ordinary case with its absence of standards. This same methodology, reliance on an ordinary case with no standards to determine how to define that ordinary case, plus an undefined risk standard, that's the same methodology by which courts apply Section 16B. In Leocal, the Supreme Court construed this statute and focused on the terms by its nature and required, based on those terms, that courts look not to the actual conduct of the defendant, but to the elements of the offense and how the offense is naturally committed. In other words, looking right back to the ordinary case approach. And there are differences between Section 16B and the ACCA residual clause in their application, but those differences come into play after this initial determination has been made. The starting point of what is the ordinary case to which the remainder of the statutory text applies. Throughout these arguments, in our briefs, and in other cases, no one has ever answered Justice Scalia's questions about how to define this ordinary case. He asked, what are district courts supposed to look to? Do they look to published cases? Do they look to statistics? And he even used the examples of, do they look to Google or to gut instinct? But nobody's ever answered those questions in the residual clause context in ACCA, and no one has been able to answer that in the Section 16B context either, because those standards do not exist. It's the absence of this standard at the very starting point of the application of the statutory inquiry. That's what puts Section 16B, just like it put the residual clause, in the broad context of Supreme Court precedent on vagueness. From cases like Smith v. Gogan up to City of Chicago v. Morales, the Supreme Court held criminal statutes to be unconstitutionally vague, even though those statutes themselves contained limits on their applicability. The Supreme Court rejected those proffered limits, and they did so because the limits did not address this starting point absence of standards, the initial determination of what would be within or without the scope of the statute. It's the same for 16B, because of the standardless, ordinary case inquiry that is Step 1. The Supreme Court, in its vagueness cases, has also rejected arguments that because people or courts might agree that certain conduct or certain crimes should be within the confines of the statute, that that somehow precludes a finding of unconstitutional vagueness. And the Supreme Court rejected that argument, insisting instead that there be standards because, in truth, the agreement itself is not based on identifiable and consistently applied standards, but instead on what the Johnson Court might have called common sense or gut instinct. And it's the same for Section 16B, because the apparent agreement on offenses presupposes the very issue that Mr. Gonzalez-Longoria presents to this Court, which is the adequacy of the standards to make a determination about what the ordinary case is, as Step 1. This Court should and can decide this issue now, because there's no impediment to the exercise of this Court's authority in this area. There's no Supreme Court precedent that holds that Section 16B is constitutional against a vagueness challenge. The Leocal Court made very clear, repeatedly, that its task was statutory construction, and Mr. Gonzalez-Longoria does not challenge that statutory construction announced in Leocal. On the contrary, his arguments are based precisely on the Leocal Court's holding that a court must look not to the actual conduct of the defendant, but to the way that the offense is normally committed. Leocal, however, said nothing about either the section's constitutionality or vagueness. But in Webster v. Fall in 1925, the Supreme Court did make a clear statement on this issue. Questions which merely lurk in the record, neither brought to the attention of the Court nor ruled upon, are not to be construed as having been decided as to constitute precedents. That's why if this Court decides that Section 16B is unconstitutionally vague, just like the ACCA clause, this Court will not be impermissibly overruling a Supreme Court precedent, because there is not one on this issue. Nor will this Court get out in front of the Supreme Court on this issue just because the Johnson Court didn't rule on Section 16B. Under principles of judicial restraint, the Supreme Court would not have reached out to issue a ruling on the constitutionality of a statute that was neither argued to it by the parties nor applicable to the parties before the Court in that case in controversy. In conclusion, this Court should hold Section 16B unconstitutionally vague because of the fundamental methodology that's used to apply that statute. That fundamental methodology is substantially identical with the methodology used to apply the ACCA residual clause. That was the basis of the Johnson holding, and that's why this Court should hold similarly with respect to Section 16B. That concludes the remarks that I wish to make an introduction and invite questions from the Court now as well. Mr. Chairman, I don't understand how your client can even bring a vagueless challenge because he's never claimed that 16B was vague as applied to his conduct, nor can he. The conduct was assault causing bodily injury with a prior conviction for family violence. Your Honor, in terms of the applied versus facial challenge controversy, first of all, the Supreme Court's most recent pronouncements, whether it's Citizens United or City of Los Angeles versus Patel, the Supreme Court has analyzed this and has stated that there is no procedural impediment. There's no sense of waiving a claim, and that the facial versus as applied challenge is a choice of remedy for the Court based on the arguments before it and based on the Court's determination of how to proceed thereafter. But that goes back all the way as well to Smith versus Gogan, because in that case, the Court was confronted with this claim that there somehow was a failure to exhaust remedies because the defendant had not brought a facial challenge in that case, and the Court rejected this idea that there's somehow a failure to, there's somehow a procedural failure if you only bring a facial challenge. And of course, in Coates versus City of Cincinnati, the Court specifically dealt only with a facial challenge. And finally, this statute is facially unconstitutional because it is the methodology that applies both to Mr. Longoria and to any other defendant who's faced with this sentencing enhancement or with this classification of an aggravated felony, because in each of the cases, the first determination is what is the ordinary case, whether it's assault, robbery, or any other case. What is the ordinary case? And that's where there's the absence of standards. So are you saying that the Supreme Court had repeatedly said that vagueness challenges must proceed on as applied? Are you saying that law has been overruled sub solentio? Your Honor, it's not that it's been overruled, but in the more recent cases, in Citizens United, in particular, and in City of Los Angeles versus Patel, the Supreme Court made very clear that a case may proceed as a facial challenge even though an as applied challenge has not been brought, and the plaintiff or the defendant in that case is not precluded from proceeding on that basis. Some of the cases that have been cited for the opposite proposition, like Hoffman Estates or like United States versus Powell, weren't actually decided on that basis, and instead, for example, in Hoffman Estates, the Supreme Court, after making this appearance of a rule that you first need to proceed on an as applied basis, then in the very next few paragraphs says that if the over breadth challenge in that case cannot be maintained on a facial basis, that the party may make a facial challenge if the statute is unconstitutional in all of its applications. So in a sense, it reversed the order of what the Court was looking at, but the more recent cases make this very clear, and of course, Johnson itself makes it very clear that a facial challenge can be maintained in this area, and that, in a sense, reconciles the more recent cases with cases like Coates versus Cincinnati, where the Court very clearly, or City of Chicago versus Brown. You were discussing Supreme Court precedent, and appropriately so, but I don't believe you discussed Torres. The majority in dissent in Torres readily identified offenses that fell within and beyond Section 16, including offenses that likely qualify only under 16b, just last week. So why doesn't that alone establish that 16b is capable of principled application? In that case, just as in Layakow, the Court is dealing with the tools that are there in statute's constitutionality or its vagueness. So the Courts weren't called upon to even begin to address these issues, but instead— But it doesn't have the problems of Johnson. They are able to say, this is inside, this is outside. It hasn't had a whole series of cases about the Armed Career Criminal Act saying, oh, we're throwing our hands up here and there and finally getting to that point. They're able to discern what's in and what's outside. I think there are two parts of a response to that. First of all, even though there is an agreement that appears on its face, it doesn't respond to the fundamental ruling in Johnson that it was the methodology and the absence of standards for the ordinary case that was the focus of the Court's ruling. But don't we have a standard, though, about 16b that it must always involve a significant risk of force, which is a different question than whether something typically creates a risk? There are differences in the applications of the statute. That's very true. But on both of these statutes, before any court can even begin to apply that, before the Court can begin to look at the factors that indicate the risk, for example, the Court first has to determine, what is the offense that I'm applying these standards to? And that's the area where applying the ordinary case approach, there simply is no standard. In Mr. Gonzales-Longoria's case, for example, would the Court look to all of the arrest records in Harris County to determine how it's ordinarily committed? Would it look only to published cases? Would it need to do a survey of the whole state of Texas prison system to see how people committing this offense had committed it? It's that fundamental, basic starting point that has the absence of standards. And what's provided afterwards in terms of limitation, it limits its application, of course, but it never gets back to that fundamental absence of standards that constituted vagueness. But if it were applicable, as Judge Elrod indicated, to all commissions of this particular crime, then your client here would prevail in this case, it seems to me. Well, he's not going to prevail because he's getting out of jail in a month, right? Well, he is going to be released, but there is another issue here, and it's the issue of the statutory classification of his offense, because that will follow him with both immigration consequences, and then if he re-offends, obviously, his future 1326 crime, if any, will be classified as an aggravated felony because of the classification of this 1326 as an aggravated felony. The Commission has recently amended this section, hasn't it, or proposed an amendment? Yes, Your Honor. Is there any argument that, and they've done away with aggravated felony, that's out of the picture, is there any argument that he should be re-sentenced in light of the amended guidelines? No, Your Honor. His sentencing was far in advance of even the proposal of those guidelines, and I haven't seen that there's been a proposal that they would be applied on that uniform. Is there any argument that these should be retroactively applied? There's case, I haven't researched it, but there is case law that when you apply and when you do not apply retroactively amendments to the guidelines, and I'm, have you looked at this? Have you formulated a position about this? Whether this guideline should, at least as the cases that were pending when the amendments were passed or proposed? On his case, Your Honor, I have not briefed that or even applied this newest guideline that's still not effective to his particular facts in his criminal history. I don't know if it would be, for example, an ex post facto violation if he might wind up higher in the range or lower. Mr. Hermann, I'll do like Judge Higginson, I'll only ask you two questions. One is, is it not correct that the guidelines incorporate reference to other criminal statutes periodically? You're nodding your head yes? Yes, Your Honor, definitely. All right, so if we decide that this 16B, a Federal statute that has pervasive importance in all of immigration law, is void for vagueness on behalf of a defendant who only has one more month to serve on his sentence, is it not also correct that we will be faced with vagueness challenges potentially to a raft of other Federal and State statutes in the context of sentencing, you know, appeals? That very well could be, Your Honor, but the Supreme Court in Lopez v. Gonzalez even, which dealt with both the sentencing guidelines but in the context of immigration, the Supreme Court recognized this intertwining between statutory . . . Well, I'm talking far beyond 16B, and you nodded your head, you know, that's a legitimate question. I don't . . . I just believe there are these other interreactions of the guidelines with Federal and State statutes. But my other question is, how do you disavow or refute Judge Pryor's reasoning in U.S. v. Matchett that it is not the business of courts in sentencing to entertain vagueness challenges to substantive criminal statutes? Your Honor, on the interaction issue, we also pointed out in some of our supplemental briefing cases where in the child pornography guideline realm, for example, the Supreme Court decision in Ashcroft v. Free Speech Coalition had had impacts. And so there will be impacts, as you have mentioned, because these guidelines have run through similar challenges to the constitutionality of statutes before. And in terms of Matchett in particular and the challenge to vagueness on sentencing, this is a challenge to a statute that is incorporated into the sentencing itself. And there was a vagueness challenge in Johnson to a residual clause, which is equally a sentencing statute, and so it is the same as in Johnson in that regard. That was a statute, and this is a guideline, and Judge Pryor goes out of his way to explain why Pew and the ex post facto decision does not apply to sentencing under the guidelines because the whole point of vagueness is the idea of due process and notice, and ultimately the district court has discretion under the guidelines. And there were two parts that are missing there. One, of course, is the arbitrary enforcement aspect to this, and then the second is the challenge themselves to the guidelines. As you mentioned after Pew, but both the government and Mr. Gonzalez-Longoria agreed that after Pew there has been a change and that the guidelines are substantively law-like enough to be subject to these forms of challenges, and in particular a challenge on the arbitrariness of the enforcement, not impugning the court itself, but simply that the results are different from court to court based on a different construction of an ordinary case. Well, if that's so, we ought to do away with . . . was it Booker or was it Gall that said that the district court has the discretion? Well, no, Your Honor, because even in those cases, the Supreme Court has always demanded that the courts get it right. Yes, Your Honor. I guess I have a related question. How can the guidelines be unconstitutionally vague? It's the theoretical version of the question when it wouldn't be unconstitutional to delete them entirely and give judges the statutory range. Don't the guidelines provide more notice and reduce arbitrary enforcement by their presence even if they're not perfect? They do, but when they're incorporating a statute itself that is subject to this vagueness, they're incorporating as well the underlying vagueness and the arbitrariness in that enforcement that accompanies the statute itself. In other words, in this case, the guidelines don't have a detailed analysis similar to, for example, what they would have in an alien smuggling case that looks at particular factors. Instead, it was just the adoption of Section 16B, and that brings with it all of the problems that are inherent in that statute itself. And I don't know if my example was clear, but, for example, in alien smuggling cases, the guidelines add particular levels for the exact behavior of the defendant. Did the defendant create a risk of danger? Did the defendant carry a firearm? But it would be an anomaly if someone were sentenced . . . it would be an anomaly if that had been declared unconstitutional. I mean, that just seems to me rather bizarre. That is, and I know the Court's struggling with that in another context, but that's not this context where it's the statute itself that's been incorporated into it and the multiple applications of that statute, not just in the guideline realm, but also in the statutory classification, the statutory maximum that's applicable to this person, and then the immigration consequences that flow through with it as well. So it is . . . I know what Johnson said about the vagueness challenge, but in terms of notice, this defendant certainly had noticed that when he kicked and hit his spouse or a family member, that that was physical, a physical reaction, I mean, physical violence, physical force. It seems to me he had noticed. Your Honor, I think . . . And I know Johnson dealt with it, but, again, this is a guidelines issue, and it's hard to argue with a straight face that he didn't have noticed that there might be consequences down the line of those acts. In the other Supreme Court case in Colander v. Lawson, Justice O'Connor made the point that oftentimes it's the arbitrariness of the enforcement that's the critical path of the vagueness doctrine, and that's what we're arguing here, that it's the arbitrariness of the enforcement of this particular statute. But looking at notice itself, while notice in the sentencing guideline context might not have that same level of importance as arbitrariness, certainly in the application of Section 16b, as it's incorporated into 1101A43F, which in this case is incorporated into the sentencing guideline, that statute certainly has important notice components to it as well, because this assault, for example, was not classified by the State as an aggravated assault, and so it doesn't have the notice, for example, that it will be an aggravated felony with all of the consequences that that will bring to someone when it's classified only as a simple assault. So there are notice concerns in the statute itself, although in Mr. Gonzales-Longoria's cases, I would argue that Colander v. Lawson justifies placing the arbitrariness component of that first. Mr. Herman, your analysis, of course, depends on the Supreme Court's opinion in Johnson, but the only reasonable reading of Johnson is that the Court would not have decided the way it did except for the continued frustration. It did so reluctantly and only because of its continued frustration with the applicability over time of the residual clause. The Court said that not only once but several times. So it just seems to me that Johnson is a completely different animal from 16B and that it's a limited holding only based on, again, that continuing frustration. Your Honor, the continuing frustration, of course, is what the Johnson Court focused on as evidence that showed that there had been this history of vagueness. But the two statutes have gone in tandem for quite some time, and it's because of this identity of the fundamental method that the Johnson Court identified, this reliance on the ordinary case. For example, in the first Johnson case from 2010, where the Court was defining what it means to use force and required it to be violent force, that was under the act. But the Johnson Court relied on Leocal itself to find that this interpretation of violence needed to be not the common law definition but a terminology specific to crimes of violence or violent felonies. And in other cases as well, there's been this constant overlap between Section 16B and the ACCA cases, where, for example, in Sanchez-Ledezma, this Court resolved the issue of whether evading arrest was a Section 16B offense by reference to the Supreme Court's own determination under ACCA that the offense represented this form of a risk, although the type of risk obviously differs between use of force and injury. But the Court brought those two analyses together, and that's repeatedly occurred both in this circuit and in other circuits. And the Supreme Court itself has reversed cases or sent them back to this Court under 16B, such as the unauthorized use of a motor vehicle cases. But you don't recognize the greater degree of uncertainty when we're talking about the risk of injury than of the act itself? I mean, you know, the Leocal Court, and it wasn't that long ago, it was 12 years ago, was so specific in specifying that 16B relates not to the general conduct but to the use of physical force might be required in committing a crime, not on the injury. How are we to overlook that in taking the rather unusual step of declaring that statute unconstitutional when it's so different? Your Honor, the Court's not overlooking the differences, but the purpose would be to focus on what the Johnson opinion actually held and the reason that the Johnson Court held the ACCA residual clause to be unconstitutionally vague. And time and again, Justice Scalia went back to the ordinary case approach in his discussion of stare decisis, in his discussion of that same history of the four separate ACCA cases that had been decided, and in his discussion of other statutes and why they might not be invalidated. Justice Scalia always went back to the ordinary case as the fundamental source of the vagueness in that statute. And all of the differences that occur presuppose a resolution of what that ordinary case is. All right. Mr. Terman, you've reserved about time to hear from the government. How do you pronounce your last name? Chief Judge Stewart, my last name is Taddy. Taddy. Okay. Thank you, Mr. Taddy. May it please the Court, John Taddy for the United States. This Court should reject the defendant's claim that 18 U.S.C. Section 16b is unconstitutionally vague for three core reasons. First, the Supreme Court's decision in Johnson was narrow. It was limited solely to the residual clause of the Armed Career Criminal Act. Johnson did not address 16b or Leocal v. Ashcroft, the Supreme Court's seminal case interpreting the clause. Second, as the Supreme Court recognized in Leocal, Section 16b is materially narrower than the act of residual clause. The Supreme Court's reasoning in Johnson further illuminates critical textual differences between the two statutes. Third, Johnson does not exist in a vacuum. The Court's decision did not replace or abolish the vagueness decisions that came before it. And those decisions counsel that it is an extraordinary thing for a court to declare an act of Congress unconstitutionally vague. Now, Your Honors, and I think some of the questions were getting to this, but it's important to take a step back and consider what was Johnson really about. And the context, as I think some of the questions Judge Smith was asking, is really key here. The Supreme Court had tried to interpret the act of residual clause in five cases over the course of nine years. And in the four decisions that preceded Johnson, the Court in Johnson determined that those cases came up with different standards that had provided lower courts and defendants with little to no guidance as to when the residual clause of the Armed Career Criminal Act would apply. As Johnson itself acknowledged, the case was really a unique problem that the entire federal judiciary had interpreting this particular clause. And it was only through the struggle that the Supreme Court had with the act of residual clause that it was able to determine  In contrast, the story of Section 16b is entirely different. Both 16b and the ACCA were originally passed in 1984, but the Supreme Court has only issued one substantial decision interpreting Section 16b, lea cal. And in that case, the Supreme Court set forth a principled application of the statute that lower courts have applied ever since without interruption. And that brings us to the critical point in this case, that the Supreme Court has never articulated a dissatisfaction with 16b or the lower federal court's application of the statute. In fact, as I believe it was Judge Elrod's question, last week in Torres v. Lynch, the Supreme Court conducted an analysis that identified offenses that fell within Section 16 and outside of Section 16, including offenses that likely would only qualify under Section 16b. And the dissent cited in support of its position a case from the Second Circuit that held second-degree arson qualifies only as a 16b crime of violence. That discussion is a strong indicator that 16b is capable of principled application. This is where Rodriguez de Cuias and this Court's opinion in canon come in. Those cases stand for the proposition that Judge Higginson articulated in his dissent to the panel opinion in this case, that it is improper for a court of appeals to get ahead of the Supreme Court by invalidating long-standing legislation that the Supreme Court has denied in a principled fashion. Moving to the second of my three core points, the ACCA residual clause and Section 16b are different in ways that would have been material to the Johnson Court. Johnson was propelled by the statute's unique problems. First, the open-ended inquiry under the ACCA into whether an offense inherently carries a serious potential risk of physical injury. And second, the fact that the serious potential risk inquiry is tied to a standard that has been used to identify crimes that have very little in common with respect to the degree of risk that each poses. The Supreme Court had struggled with that list of offenses in each of its four prior cases. But 16b does not share each of these two features that the Johnson Court focused on in terms of the textual problems with the residual clause. First, as the Supreme Court recognized in Leocal, 16b reaches a narrower class of offenses than the ACCA residual clause. That's because the Section 16b analysis is limited to considering the substantial risk of physical force that may occur in the course of committing the offense. And therefore, courts are not permitted to consider a remote risk of injury that may occur after the offense has been complete. And I'll give you a perfect example of how this textual difference plays out in the Court's own case law, specifically the case law addressing the legal possession of a short-barrel shotgun, which was the very offense that caused so many problems in Johnson. The reason why possession of a short-barrel shotgun was so problematic to begin with is because legal short-barrel shotguns are generally possessed for one purpose, to commit a violent crime. And that's why this court in the United States v. Serna held that a legal possession of a short-barrel shotgun was a violent felony under the ACCA, because there is a strong likelihood that someone would use that gun to commit a violent crime, and that during the commission of that crime, there would be a serious potential risk that someone would be injured. Now those steps show that the many logical inferences and the wide-ranging inquiry that the court had to conduct in order to commit to that result. The court came to a completely different result with respect to the same illegal possession of a short-barrel shotgun in the United States v. DSDS. The court had no trouble concluding that possession of an illegal short-barrel shotgun is not a 16b crime of violence because the offense is complete upon possession of the weapon and therefore, quote, force against the person or property is not needed to complete the crime. The Supreme Court came to the same conclusion in Torres v. Lynch when it discussed Section 16b. It stated it would not reach felony possession laws in other firearms offenses, and that was at page 13 of the Supreme Court's slip opinion in that case. This example clearly demonstrates that the breadth of Section 16b is materially narrower than the ACCA residual clause. The second key textual difference between the two provisions is that 16b does not have a confusing list of enumerated offenses. Now the defendant argues that the distinction was unimportant and that it was an after-determination, that this was something else that enhanced the vagueness of the statute, but Justice Scalia, the author of Johnson, and the principal critic of the ACCA throughout the four prior opinions, his dissent in Sykes shows that this was clearly an important consideration. In Sykes, Justice Scalia had emphasized that he believed that the principal reason for the residual clause's vagueness was that it prefaces the risk inquiry with four confusing examples that have little in common. That's at page 34 and 35 of Sykes. He had been making this point since James, and it's found its way verbatim into the Supreme Court's opinion in Johnson. One final point on the second core issue, Your Honors. The defendant wants the Court to embrace a very broad reading of Johnson, and it seemed like he was stepping a little bit away from this in his argument, but in his reply brief he states that the fundamental reason for the Johnson decision was the fact that 16b requires an ordinary case approach. If that was the case and the ordinary case approach was the sole reason for the Johnson decision, then there are many, many pages of that opinion that would have been irrelevant to reach that determination. It would also mean that this Court's analysis in United States v. Schofield was incorrect. In that case, this Court conducted an ordinary case approach to determine whether an offense by its nature is a sex crime. The Court also rejected the defendant's Johnson-based vagueness challenge because the SORNA residual clause does not feature a confusing list of exemplar crimes, and there was not indeterminacy stemming from problematic application evidenced in prior opinions. The Court's nuanced approach in Schofield should guide its approach here as well, because the same principles apply to distinguished 16b. Let me ask you, you're open for questions now? I thought that was a red light. He took 15 to do on interrupt, and he's got 15 interrupted. Judge Jones, I just briefly have one more point, and it's the final court point. No, not at all, Your Honor. I'm here to answer your questions, Your Honor, absolutely. The last final point is just that the requirement of an as-applied challenge still applies, and Maynard v. Cartwright makes that clear. The Supreme Court's vagueness decisions make that clear. Many of the decisions that were discussed, Coates' City of Chicago v. Morales, even Smith, if you dig into those opinions, those were all situations where the statute itself infringed upon other protected rights, First Amendment rights, the Patel case, Fourth Amendment rights. I'm not exactly sure how Citizens United applies here, but that was a First Amendment case as well, and it was not a criminal case, mind you. But if you look into the cases in which the Supreme Court has interpreted whether an as-applied challenge is required to statutes that do not infringe on constitutional rights, which is the situation here, an as-applied challenge is required, and you haven't heard the defendant say that the statutory enhancement he received was vague as applied to him. He had noticed that his prior conviction for assault resulting in bodily injury with a prior conviction of family violence could have been treated as a crime of violence. He did not lack notice, and there was no arbitrary enforcement. And at this time, Your Honor, Judge Jones, I would be happy to consider your question. Thank you for waiting. Well, I'll ask you the same question I asked Mr. Herman. In what respects do you differ with Judge Pryor's opinion in Matchett that the guidelines should not be subject to vagueness challenges at all? Well, I think there were two things that were at play in the Matchett opinion, Your Honor. And the first is that Judge Pryor's opinion in Matchett focused only on the notice side of the two elements of vagueness doctrine. Under the Supreme Court's vagueness precedence, there's a requirement of notice to a defendant as to whether the statute applies to him or her, and there is the requirement of arbitrary enforcement. And the arbitrary enforcement prong is really the focus of vagueness challenges presented to the guidelines. And the reason for that is, and I think the Sixth Circuit came to this result in Powlock when it reversed its prior precedent and held that vagueness challenges to guidelines are cognizable. They said we live in a pre-Pew world and a post-Pew world. Well, Pew is ex post facto law, and that's different. Yes, Your Honor, but it did acknowledge for the first time, the Supreme Court acknowledged that constitutional challenges can be brought to the guidelines, which it had not previously. And the Justice Department in that litigation said that the ex post facto clause does not apply to the guidelines because they're merely guideposts, and as a result, they do not have the force of sentencing statutes. And the Supreme Court rejected that argument. The Supreme Court held no. Courts must get the guidelines  to the Supreme Court in post . . . Excuse me, sir, but we also know that any district court can fully avoid the guidelines by saying I'm, you know, sentencing outside the guidelines. Yes, Your Honor. And the whole point of this, you know, the vagueness is the notice and the as far as Judge Pryor did touch on discretion and he focused on the flexibility given under the Supreme Court's ruling in Booker to sentencing judges. So he did touch on that and he also distinguished Pew. Yes, Your Honor. So I think the first thing to consider is that judges certainly do have the discretion to vary above and below the guidelines under 3553A and that determination would be subject to deferential review by a court of appeals. But what is not subject to deferential review by the court of appeals is the determination of the guidelines themselves and whether a court gets the guidelines calculation correct in the first instance. That's subject to de novo review and reversal. And I think the Supreme Court focused on that in its decision a few weeks ago in Melina Martinez of the importance of the guidelines as the load star for sentencing. And those are the same sort of considerations that were involved in Pew. They were considerations that were also at play in Johnson. Johnson talked about how vagueness challenges can also be applied to statutes fixing sentences and underscored the importance of the guidelines excuse me, underscored the importance that judges get sentencing statutes right. You can see that there's no notice problem here though because even without the 16B enhancement, I think he was facing a 10 year statutory maximum which is way above the sentence he got. So you're going solely on arbitrary enforcement? Judge Costa, would that be respect to a challenge to his conviction or to his sentence specifically? So a challenge to his sentence, we do believe that there would be a notice problem as well because if you're in theory, so if you have a statute like the Armed Career Criminal Acquisitional Clause that the Supreme Court has determined is a total black hole of indeterminacy, it has no foundation, it has no real guidance to what courts can and can't determine what lies inside and outside a defendant would not have sufficient notice that the enhancement would be applied and it would invite arbitrary enforcement. I'm saying in this particular case, wipe away 16B. He was facing, just for a prior felony, a 10 year statutory maximum. That's correct, Your Honor. So in this particular case, did he have any notice issue? Are you conceding that there is none? I would, I mean our position is certainly in this case that there are no notice issues at all with respect to 16B. Okay, so your vagueness, you're allowing a vagueness challenge to be brought, your view that that's permissible against the guidelines is solely on the arbitrary enforcement. So my next and last question is what Supreme Court case upheld a vagueness challenge only on the arbitrary enforcement? Because Johnson obviously involved both because it was a statutory enhancement. I'm not aware of one. I think Pew, I think it's sort of a line of cases that you can trace from Pew through Johnson and Melina Martinez that indicates that the Supreme Court believes the guidelines are subject to constitutional challenge and then the logic follows that if courts must get the sentencing determination correct, then they have, they wouldn't have the ability to apply a guideline that is unconstitutionally vague in a principled fashion. And as a result, its very application would be arbitrary. And this, in addition, Your Honor. I made the mistake lawyers do of saying I had only one final question. That's fine, Your Honor, of course. I'll follow up. So even outside of a sentencing context, just regular, I mean until Johnson really, vagueness challenges just were brought against the statutes criminalizing conduct themselves. You haven't seen a Supreme Court case that just upheld a vagueness challenge on the arbitrary enforcement prong without a problem of notice. I'm not aware of one, Your Honor. And I don't believe the Supreme Court has specifically addressed the issue of whether vagueness challenges can be brought to the guidelines, which is why there is a circuit split on that issue. Right. Why should we enter into the circuit split? We don't need to decide that question to decide this case under your view of this case, do we? I agree, Your Honor. No, we don't believe that section 16b is vague at all. But even as, and certainly as applied, even apart from parsing 16b, as applied, he knew what he was doing. And so we don't need to get into the circuit split, do we? And especially in a case where somebody is about to be out and where the guideline is changing, why should we venture in and even on the 16b question, why don't we just stop it? As applied to him, it's okay. I'm not saying that, arguendo, I'm not saying that's the position. I'm just, can you help me through that? I think that would be permissible, Your Honor. I think the government's first position is that the defendant was required to mount an as applied challenge to the enhancement that he received. And he cannot survive that as applied challenge because he had sufficient notice that his prior conviction for Texas assault was a 16b qualifying crime of violence. And as a result, there is no notice problem and there's no arbitrary enforcement. That's the threshold issue that this court can decide this case on. And why should we wade into all of these other murky waters in this particular case? I don't think you should, Your Honor. I think that that would settle the inquiry here that the defendant failed to mount an as applied challenge and an as applied challenge is required. Now the other arguments as to whether the defendant's facial challenge succeeds, obviously we also have positions as to why Johnson is distinguishable from section 16b. But you're correct that our threshold argument is that the defendant has, and he's never contended that it doesn't, that it applies vaguely as to his prior conviction, Your Honor. I have a couple questions. I'm having difficulty understanding your argument about the as applied challenge because it seemed to me that the majority in Johnson explicitly rejected that because two, one a concurring opinion and the dissenting opinion said this crime at least was clearly within the residual clause and Scalia just dusted that off and he said no, you can bring a facial challenge. I don't think that any judge said that it clearly fell within the auspices. Maybe Justice Alito came close in saying that he believed possession of a short barrel shotgun is a violent felony under the ACCA. The two other dissenting justices, I believe it was Justice Kennedy and Justice Thomas. They both said that they didn't believe that the statute was unconstitutionally vague but that possession of a short barrel shotgun fell outside. I apologize, Your Honor. I thought Justice Scalia said there can be statutes that sweep too broadly but you can still amount a facial challenge even when they cover conduct that clearly is constitutional. It did say that, Your Honor, but it also the court as a result of the indeterminacy regarding possession of a short barrel shotgun to begin with and the difficulty the court had had identifying any offenses that fall within and without didn't have the opportunity to test the core violator standard that was articulated in Smith v. Gauguin where it said that even if you have a statute and the statute in that case I believe had to do with treating the flag in an inappropriate manner. Another case that had First Amendment implications but the court said in that situation. My point was Johnson was not an as-applied case. It treated it as a facial challenge. Yes, it triggered a facial challenge. That seems to me that we can't require him in this case to bring an as-applied challenge. I think there have been two schools of approach there, Your Honor. I think one is that you have statutes like Johnson that the court determines is totally indeterminate except for maybe some extreme examples where there could be things that fall. And I think Elko and Grocery. Now you're getting into the question of whether it's vague or not. I'm just talking in terms of can we require this defendant to only bring an as-applied challenge and not bring a facial challenge. It seems to me Johnson says no. I think if you do identify certain core offenses, and this is the Smith principle, if you do identify certain core offenses that fall within a particular statute and the defendant is a hardcore violator in that he is one of the individuals that would clearly be covered by that statute, an as-applied challenge is required. And the reason why I kept bringing up Elko and Grocery and Smith in those cases is I think you see sort of two themes. One is the requirement of a constitutional violation. So First Amendment infringement in a lot of those cases. And Smith had that presence as well. But also a totally arbitrary standard that doesn't have really any rubric at all for determining what falls inside and out. Let's talk about that for a second. Leo Kal Chief Justice Rehnquist made it clear that what we're still talking about is the risk of physical force being used. And then he gives, as he calls it, the quintessential example of burglary. And now about what risk burglary presents of physical force being used against the occupant. Now we have the Commission came back in January in their Guidelines Amendment and they discount that entirely. They basically say we disagree. Burglary does not present a risk. And so it seems to me we have pretty good authority now that questions underlying the risk analysis that even the Supreme Court has engaged in. How are we as a court to find clear guidelines on this risk analysis when there's such a basic disagreement now between the Sentencing Commission and the courts? So I'll say two things about the Sentencing Commission determination, Judge Owen. One is that there are differences between the Career Offender Guideline, which is what I believe you were referencing, and 16b. The government has conceded that I'm talking about burglary. Burglary presents. That was Leo Kal, which was 16b. And Chief Justice Rehnquist, one of the examples that he gave to say, you know, here's the kind of risk we're talking about is burglary under 16b. So there's, I think I was about to say there's two things there. In the Career Offender Guideline, the only thing that was permitted to be considered under 4b.1.282 is the serious potential risk of injury to a person. And by removing burglary of a dwelling, the Sentencing Commission stated that burglary is the quintessential property crime. And it cited a study, and I can give you the citation, it's at 81 Federal Register 4744. The Sentencing Commission cited a report that said burglary is the quintessential property crime. And the inquiry that was required under 4b.1.282 was the same inquiry required under the ACCA. So the Commission made that determination that it didn't believe that there was a serious potential. Since burglary offenses rarely result in physical violence. Yes. So they're saying basically there's not much risk of physical violence because of a burglary, which to me is directly at odds with the reasoning of Leo Kal that burglary does present a risk of physical force being used. I don't think so, Your Honor, because I think the point is slightly more nuanced than that. Burglary presents the substantial risk of physical force to person as well as property. And the reason why burglary is the quintessential 16b crime is not just because of the possibility of a confrontation at the door between a particular defendant and a victim, but also the substantial risk that force can be applied to effectuate the entry into the building. And that's what the Commission was talking about when it noted that burglary is the quintessential property crime. And it was also what Congress focused on when it first passed 16b back in 1984. It talked about offenses I believe it was like robbery and assault that could qualify under 16a as enumerated offenses, but then it talked about burglary as an offense under 16b because of the risk to property. And I believe we cite that proposition in our brief. So it's not just the risk to person that makes burglary the prototypical crime under 16b, it's also the serious potential risk of substantial risk of physical force, excuse me, to property that's presented by that particular offense. And I'll say one additional thing sort of on the line of argument that ACCA had a very difficult time determining what statutes fell within and without. I would be surprised if there was any court of appeals in the country that has had to interpret section 16b to a greater degree than this court given the volume of illegal reentry cases that occur. And if you look at the cases that are cited by the defendant, he notes narrow disagreements with respect to offenses like unauthorized use of a vehicle, with effect to certain sex offenses, which are always going to be difficult because of the nature of consent in the inquiry, and drunk driving before Leocal. I think it's very illuminating that the defendant hasn't been able to note any other difficulties or circuit splits with other statutes. And that also goes to the point that was brought up by the court just last week in Torres, which I also find extremely illuminating. There did the dissent discuss 16b as sort of a catch-all for the rest of the 1101A43 aggravated felonies and said here's a bunch of offenses that would fall within section 16, including certain arson offenses that they believed would fall within under 16b. The majority comes back, and the majority doesn't say no, you're wrong, half that statute's invalid, that wouldn't be a saving construction. The majority comes back and says we agree with you. We agree that those offenses would probably qualify, but here's a bunch of other ones that probably wouldn't. Possession offenses, I think they mentioned child pornography offenses, and the reason for that is there's no substantial risk of physical force within the commission of the offense, within the elements, as this court has observed in its possession offenses. If we do robustly address the case on the 16b merits, should we address it in precisely the way that the Sixth Circuit does in the U.S. v. Taylor case, or do you have a nuance? Does the government have a different view? No, I think Taylor got the inquiry largely correct, Your Honor. I think it noted that some of the material distinctions within the Johnson opinion analysis was not just problems with the ordinary case approach itself, or else the court would have said that it would have ended its inquiry. It was the problems with respect to the indeterminacy about how the ordinary case approach is even conducted wholesale because of the inquiry into the serious potential risk of injury after the crime is over, and because of the four enumerated offenses which cause so much indeterminacy, and because of the problematic history of having to decide five cases over nine years that never created any sort of a principled approach for the lower courts. I think the Sixth Circuit's straightforward, clear analysis that I believe is a good roadmap for this court if it wants to determine that 16b is not a crime. Don't you think it's revealing that there was a difference of opinion between the Sentencing Commission and Justice Rehnquist about whether, in the ordinary case, a burglary presents a risk of force being used in the course of committing that offense against the person? I do think that it is an interesting determination. I think perhaps Justice Rehnquist, when he wrote the opinion, one, he may have had in mind the possibility of greater degree of confrontation at the door. I think he also likely had in mind the substantial risk of physical force to property as well. There's no clear indication. I also think it's illuminating that the court in its footnote in Leocal, footnote seven, and this is a very interesting point, an important point that has not been discussed, explicitly distinguished 16b and 4b1.282, indicating that 16b was plainly narrower than 4b1.282. Isn't that the kind of decision you have to make in all these cases? In the ordinary case, is there substantial risk of injury either to the person or to property? And if Justice Rehnquist and the Commission disagree, how can you say that it's not vague? Well, no, Your Honor. For one, it's not the substantial risk of injury. It's the substantial risk of physical force to property. And it's not clear that Justice Rehnquist and the Commission agree. Again, Justice Rehnquist identified a substantial risk to a victim. That could mean the property that the person was breaking into. It could mean the individual. And there is the possibility that as a result of looking into certain statistics and information which may not be available, that certain offenses fall within and without of what's considered to be the ordinary case. But that doesn't render a statute vague. We cite many cases in our brief that state that close cases don't render a statute vague. They don't even result in the imposition of the rule of lenity. It's certainly ambiguous, isn't it? No, Your Honor. I don't think it's ambiguous at all. I think there are some offenses that will present difficult choices. And the government does not deny that. But to hold 16B unconstitutional simply because it requires evaluation of the ordinary case approach would be a rejection of an entire framework for treating recidivist statutes that Congress has relied on for 30 years now. And it's not something that the Supreme Court believes is a wholesale difficult problem. I think there's enough evidence both in Leocal and now certainly as a result of Torres that the Court appears to be applying the statute in a principled way and doesn't think it's overly problematic. There certainly is not the history that you had with the ACCA, which was Justice Scalia's main issue in addition to the enumerated offenses in all of his dissents. Of course. ...